■ NICHOLAS TALLARICO, Individually and as Executor of LAURA TALLARICO, Deceased, Respondent, v NASSAU HOSPITAL et al., Defendants, and MAGANLAL SUTARIA et al., Appellants. —In a wrongful death action based upon medical malpractice, defendants Sutaria and Hines appeal, as limited by their brief,

from so much of an order of the Supreme Court, Nassau County (Morrison, J.), entered October 23, 1984, as granted plaintiff summary judgment against them to the limited extent of holding that they had failed to exercise that degree of care in performing heart surgery on plaintiff's decedent on March 6, 1980 which reasonable physicians in this community would have exercised under the circumstances.

Order affirmed, insofar as appealed from, with costs.

On this record, Special Term properly found that the defendant surgeons deviated from accepted practice in allowing a phrenic pad to remain in decedent's chest after heart surgery. As defendant Sutaria, the attending surgeon, himself noted, a "phrenic pad is distinguishable from a gauze pad in that it is larger, of a different material [rubber like], and used for a very specific purpose [to protect the phrenic nerve from the ice bathing the heart during surgery]". Thus, while Sutaria strenuously maintained that he did not deviate from accepted practice in relying upon the sponge count made by the nurse before closing the patient on the operating table, that is not the issue. Nowhere in any of defendant surgeons' papers is there any contradiction whatsoever of the evidence of the codefendant hospital that a sponge count did not include phrenic pads and that responsibility for the latter's removal lay squarely on the operating surgeons.

We do not pass upon the propriety of the severance as no issue is raised with respect thereto on appeal. Mangano, J. P., Bracken, Lawrence and Kooper, JJ., concur.

Weinstein, J., dissents and votes to reverse the order, insofar as appealed from, and deny the motion for summary judgment in its entirety, with the following memorandum: In my view, plaintiff's motion for summary judgment should have been denied in its entirety. Summary judgment is, of course, a drastic remedy which should only be granted where there is no doubt as to the absence of triable issues of fact *(Andre v Pomeroy,* 35 NY2d 361). Moreover, it is not the function of a court, in determining a motion for summary judgment, to pass upon the credibility of a witness *(Missan v Schoenfeld,* 95 AD2d 198, 207, *appeal dismissed* 60 NY2d 860).

By the admission of plaintiff's counsel, there is a dispute in this case as to whose responsibility it was to account for the phrenic pads which were used during the decedent's first heart surgery. Defendant Sutaria averred that he had exercised sound medical judgment in relying upon the nurse's sponge count before closing the patient's incision inasmuch as

it was standard procedure for the nurse to keep an accurate count during surgery. In concluding, as a matter of law, that there had been a gross deviation by the defendant doctors from the proper standard of care expected of surgeons in their community, Special Term apparently concluded that it was the ultimate responsibility of the attending surgeon to ensure that all such foreign objects as sponges and phrenic pads employed in the surgery were removed prior to closing the surgical incision. In so concluding, Special Term made a negative assessment of defendant Sutaria's credibility. This was patently improper on a motion for summary judgment.

Accordingly, I conclude that the award of partial summary judgment on plaintiff's behalf was erroneous inasmuch as it unfairly precluded the defendant doctors from litigating a vital aspect of their defense.